[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO PRECLUDE EVIDENCE ON SECOND, THIRD, AND FOURTH SPECIAL DEFENSES
The plaintiff Ann Noble is a resident of Southbury, Connecticut. On January 28, 1997, while driving a passenger car on Interstate 684 in New York State, she was injured in an automobile accident. The plaintiff brought this action in the Connecticut Superior Court against two defendants: Raymond Moore, the driver of the van that hit her, and Pana, Inc., who employed Moore and owned the van. Moore is a Connecticut resident, and Pana, Inc. is a corporation with offices in Danbury and Norwalk, Connecticut.
In response to the plaintiff's complaint, the defendants have interposed five special defenses, the first and fifth of which are not at issue. The other special defenses are failure to wear a seatbelt, assumption of the risk, and failure to sustain the minimum required injuries necessary to bring suit, none of which is a cognizable special defense under Connecticut law. The defendants' special defenses may all be pleaded under New York law. Thus, the choice of law problem for this case is significant.
The plaintiff has tried on two prior occasions to have this court address the choice of law issue. On November 16, 1998, the plaintiff filed a Motion to Strike these special defenses. Both the plaintiff and the defendants filed briefs on the choice of laws issue. On February 9, 1999, the court (Holzberg, J.) denied the Motion to Strike, without reaching the merits, holding that is was inappropriate to determine the CT Page 224 choice of law in the context of a motion to strike. Rather the court was undoubtedly persuaded that it was premature to conduct the kind of "searching case-by-case contextual inquiry into the significance of the interests that the law of competing jurisdictions may assert in [the] particular controvers[y]." O'Connor v. O'Connor, 201 Conn. 632, 658,519 A.2d 13 (1986). See also, Ffolkes v. Pasko, 1997 Ct. Sup. 5054,19 CLR 442, No. CV 96 0154395S, Judicial District of Stamford, (Karazin, J.) May 13, 1997.
The plaintiff tried again on March 29, 2001, filing a Motion for Summary Judgment to exclude the Special Defenses from consideration in the case. This time the briefs were more extensive and were accompanied by affidavits, discovery responses, and other types of documents that normally accompany such motions to demonstrate the presence or absence of material facts in dispute. Once again the parties failed to obtain a ruling on the merits, with the court (Rogers, J.) holding that one cannot obtain summary judgment on a special defense; but rather that the presence of a special defense in the case can only be dealt with by a Motion to Strike, or by a Motion in Limine to preclude evidence relating to the special defense. In her Memorandum of Decision, the court agreed, however, that the choice of law issue needed to be resolved before trial.
The plaintiff has now, for a third time, filed a motion addressing the choice of laws problem, this time entitled Motion in Limine to Preclude the Defendants from Offering Evidence or Proof as to their Second, Third, and Fourth Special Defenses. The defendants once again oppose the motion on substantive grounds, and briefs have been filed by both sides. The defendants also oppose this court ruling on the matter at this time, arguing that the determination of choice of laws should be left to the judge at the time of trial. It is this topic that the court will address first.
This court fully understands and respects the rationale of both prior courts in declining to rule on the merits of the choice of laws issue. At the time of the Motion to Strike, not two months had passed since the return date. The prospect of a hasty and ill-advised analysis of the issue loomed for the court, in light of the teachings of O'Connor,
supra. By the time of the Motion for Summary Judgment, the factual issues that impeded an earlier ruling on the issue had been fully developed, but the motion of the plaintiff appeared to be an inappropriate procedural vehicle for a determination of the choice of laws issue.
The present argument of the defendants — that the trial court should decide the issue — is not without its appeal. But given the current practicalities and expenses of litigation, this judge believes CT Page 225 such a deferral is unworkable and unfair. The trial judge assigned to the case is often not identified until after the jury is selected and the specific days for trial assigned. Even if the jurors are told to wait for a few days before or during the trial for the judge to decide the issue, there is no guarantee that the court can appropriately and correctly decide such an issue under that kind of time pressure, particularly when the answer may be gleaned only with reference to the law of a foreign jurisdiction with which the court is initially unfamiliar.
Meanwhile, the careful scheduling of the case or cases stacked up behind the one on trial becomes disorganized, subjecting counsel, witnesses and jurors in those cases to inconvenience. And as for the attorneys in the case on trial, they must approach the time-consuming and often expensive task of preparing for trial without the most basic issue being settled — which set of laws applies. This court believes that deferring this decision to the trial judge, while correct for most "in limine" motions, such as those involving the rules of evidence, is not the appropriate course when a choice of laws issue is presented, as in this case.
That said, the question is which law governs each special defense, that of Connecticut or New York.
Connecticut has abandoned "categorical allegiance" to the doctrine oflex loci delicti that favored the law of the place where the tort occurred. O'Connor v. O'Connor, 201 Conn. 632, 648, 519 A.2d 13 (1986). In its place, the principles of the Restatement Second of Conflict of Laws §§ 6, 145, and 146 have been substituted. Id. These sections of the Restatement provide:
 (1) A court, subject to Constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protections of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. 1 Restatement (Second), Conflict of Laws § 6.
CT Page 226
 Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue. 1 Restatement (Second), Conflict of Laws § 145(2).
 In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
1 Restatement (Second), Conflict of Laws § 146.
Two cases involving extra-territorial car accidents have been decided by the Connecticut Supreme Court under these precepts. The first wasO'Connor v. O'Connor, 201 Conn. 632, 519 A.2d 13 (1986), the case in which the principles governing Connecticut's conflicts analysis in such cases were first announced. In that case, two Connecticut domiciliaries — the plaintiff and the defendant — were traveling in the same motor vehicle when it was involved in a one-car accident in Quebec, injuring the plaintiff. The trip had started in Vermont and was to end in Vermont. The vehicle was neither registered nor insured in Quebec. The plaintiff received initial medical treatment in Quebec, and thereafter evidently returned to Connecticut. The plaintiff brought a negligence action against the defendant in Connecticut. The defendant moved to strike the complaint on the ground that the law of Quebec applied, not the law of Connecticut, and that Quebec law did not permit such a claim because Quebec had a government-funded compensation scheme for auto accident victims. The Supreme Court held that Connecticut law applied.
The second case is Williams v. State Farm Mutual Automobile InsuranceCo., 229 Conn. 359, 641 A.2d 783 (1994). In that case, the plaintiff was driving in New York State when his car was struck by a vehicle that was registered in New York operated by a driver with a California license. The plaintiff received initial medical treatment in New York, and thereafter received all his medical treatment in Connecticut. The CT Page 227 plaintiff was paid $10,000 from the tortfeasor, exhausting the tortfeasor's policy limits. The plaintiff then brought an underinsured motorist claim against the defendant in Connecticut, decided through arbitration. The arbitrators applied New York tort law to the question of whether the plaintiff was legally entitled to collect damages against the tortfeasor, a prerequisite to an underinsured motorist claim under the plaintiff's policy with the defendant. The Supreme Court held that the choice of New York law was correct.
In weighing the § 145 factors from the Restatement — (a) the place of the injury, (b) the place where the conduct causing the injury occurred, (c) the domiciles of the parties, and (d) the place where the relationship, if any, between the parties is centered — it is not hard to see how the court arrived at the answer to the choice of laws problem. First, in an automobile accident case, (a) and (b) will almost always coincide. The place of the injury and of the tortious conduct in both O'Connor and Williams was in the foreign jurisdiction. In O'Connor,
the plaintiff and the tortfeasor were both domiciled in Connecticut, under (c), and had an ongoing relationship centered in Connecticut, under (d). In Williams, only the plaintiff was a Connecticut domiciliary, and there was no relationship between the plaintiff and the tortfeasor.
In the instant case, there is a uniform Connecticut domicile, likeO'Connor, but no relationship between the parties, like Williams. That being so, that is, with no clear superiority of factors weighing one way or the other, § 145 and 146 mandate that the court turn to the factors of § 6 for further guidance. of these, only (b) the relevant policies of the forum, and (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, are applicable here under the teachings of bothO'Connor and Williams.[1]
A good starting point is an analysis of whether either state has an interest in the fair system for determining compensation for personal injuries when one Connecticut resident is injured by another Connecticut resident. Clearly, New York's interest in this regard is minimal. And theWilliams case does not lead to a contrary conclusion. That case involved an analysis of the relative interests of Connecticut and New York in containing no-fault insurance premiums when the plaintiff's injuries were initially treated in New York and where the tortfeasor's vehicle wasregistered in New York. The court held there that New York had a significant interest. With two Connecticut drivers and two Connecticut vehicles involved in the instant case, New York's interest diminishes significantly, particularly on the issue of whether the plaintiff has alleged the threshold amount of damages necessary to maintain suit. CT Page 228
A second question is whether the law sought to be applied is one that expresses a policy of regulating the conduct of the parties in the jurisdiction that was the site of the offending conduct, or one that merely limits the liability exposure to which the conduct subjects the offender. See, e.g., O'Connor, supra, 654. The answer to that question is not quite so clear where the law sought to be applied by the defendant — New York's requirement that persons who travel its roads use seatbelts or suffer some of the consequences — is examined. That law, New York Vehicle and Traffic Law § 1229-c(8) provides that failure to wear a seat belt is not admissable as evidence in a civil case as to liability, but it may be introduced in mitigation of damages if the defendant has pleaded such noncompliance as an affirmative defense. New York certainly has an interest in compelling the use of seat belts on New York roads, if that is the effect of such a law. Connecticut has no interest in regulating any such conduct in New York.
But when the method of compelling such use is to allow a tortfeasor, in mitigation of damages only, to interpose as a defense the victim's failure to use seat belts, the situation looks much more like a limitation on liability exposure than like a regulation of conduct.
This is particularly so in light of two other important principles from the leading choice of laws cases. The first is that deference is due the law of the jurisdiction that has a legitimate interest in regulating thedefendant's conduct, meaning the conduct of the alleged tortfeasor, within its borders. But the New York seat belt law is not a law governing the defendant-tortfeasor's conduct. Indeed the New York seat belt lawprevents the introduction of any such evidence on the issue of the defendant's liability. Were it otherwise, New York's interest might appear stronger. As stated in O'Connor, if the issue at stake had been whether the defendant's conduct had been negligent, the court might well have concluded that Quebec law on that issue should govern. Id., 653-54.
The other principle is that, as a general proposition, placing a limitation on damages is an ineffective way to regulate conduct. See, e.g., Reich v. Purcell, 67 Cal.2d 551, 556, 432 P.2d 727, 63 Cal.Rptr. 31
(1967), cited in O'Connor v. O'Connor, supra, 654-55. Rather, such a limitation seems more properly confined to the arena of policy decisions about what would be a fair compensation scheme, an arena where, given the domicile of the plaintiff and defendant in this case, Connecticut's interests are more compelling.
This court is persuaded that on the second and third special defenses that allege a failure to mitigate and an assumption of the risk of injury through the plaintiff's failure to wear a seat belt, the interest of Connecticut in ensuring a fair compensation scheme, when both the CT Page 229 plaintiff and defendant are Connecticut citizens, outweighs the interest of the foreign jurisdiction, where the accident happened to occur. Accord, Partman v. Budget Rent-A-Car of Westchester, Inc.,43 Conn. Sup. 239 (1994).
None of the special defenses is cognizable under Connecticut law. Accordingly, the Motion in Limine to Preclude the Defendants from Offering Evidence or Proof as to their Second, Third, and Fourth Special Defenses, treated in the same manner as a motion to strike those special defenses, is granted.
Patty Jenkins Pittman, Judge